JAMES HUGGINS & SONS, Inc.,
Appellant,
v.
AVENARIUS BROS. (Attorney General of the United States, substituted),
Appellee.

Patent Appeal No. 6092.

United States Court of Customs and Patent Appeals.
June 28, 1955.

Richard L. Underwood, Washington, D. C., for appellant.

William P. Cochrane, Washington, D. C., Morsell & Morsell, Arthur L. Morsell, Jr., and Curtis B. Morsell, Milwaukee, Wis., for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

WORLEY, Judge.

This is an appeal from the decision of the Examiner-in-Chief of the United States Patent Office, 97 USPQ 474, reversing the decision of the Examiner of Interferences which sustained the petition of James Huggins & Sons, Inc., petitioner below and appellant here, to cancel Registration No. 14,048 for "Carbolineum" as applied to preservative liquids.

The parties' efforts in support of their respective positions have resulted in a somewhat lengthy record consisting of oral testimony of witnesses, supplemented by a large number of documentary exhibits relating to orders, invoices, records of sales, labels, advertising, price lists, catalogues, correspondence, farm bulletins and numerous other documents covering a period of more than seventy years. As observed below, some of the evidence is irrelevant, immaterial and incompetent, but stripped of material of such character, we think the record fairly supports the following summary of those facts material to the disposition of the issue involved, viz., whether the Examiner-in-Chief erred in holding that the petitioner failed to discharge its burden of proof that the involved mark was, or has become, so descriptive or generic as to preclude appellee's continued and exclusive use thereof as a trade-mark.

The case has been prosecuted on behalf of the United States Attorney General, in whom title is currently vested under the provisions of the Alien Property Act,[1] by the Carbolineum Wood Preserving Company of Milwaukee, Wisconsin, respondent below and appellee here. Since about 1889 that company has had an exclusive licensing agreement with the R. Avenarius Company of Germany involving an anthracene oil compound, a product which it manufactures, advertises, labels, and sells under the trademark "Carbolineum," which was first registered in 1887 under the Act of 1881,[2] renewed in 1917, and again in 1937.

The business of the Carbolineum Wood Preserving Company is devoted exclusively to the manufacture and sale of the one product. It has spent from 15 to 20 thousand dollars per year in advertising, and serves approximately 15,000 retail and 10,000 consumer outlets, through and to whom more than 12 million gallons have been sold since it started in business. The product itself is a liquid which is used as a wood preserver and insecticide, particularly on poultry mites. Although it is composed principally of a high grade anthracene oil, appellee claims that the end product is the result of a secret formula or process conceived and patented in Germany by the original Avenarius Brothers. One of the admitted constituents of appellee's product is chlorine, and it appears that none of the competitive anthracene oil products contain that ingredient.

Over the years other concerns frequently attempted to appropriate the involved mark for use in the advertising and sale of certain other types or grades of anthracene oils. In those instances appellee protested such use on the ground that it alone was entitled to exclusive use of the mark. Generally, informal notice was sufficient to secure voluntary discontinuance, but where legal action was taken, it appears that appellee's claims to the mark were sustained. In that connection, this controversy apparently had its inception in 1934 when appellee objected to appellant's use of the word "Carbolineum" on its labels in the advertising and sale of "Diamond H Poultry Mite Paint Specified Commercially as Carbolineum." Appellant thereupon

1. Executive Order No. 9788, 50 U.S.C.A. Appendix, § 6 note.

2. Now 15 U.S.C.A. § 1051 et seq.

changed its labels to read "Diamond H Poultry Mite Paint." However, about 1946 or 1947 appellee learned that appellant was again advertising and labelling its product as "Diamond H Carbolineum." Objection was renewed, appellee again claiming exclusive ownership of the mark. Afterward, in 1949, appellant filed the instant action for cancellation, alleging, among other things, injury, interference, and damage to its business; and, primarily, that regardless of its original nature or merit, the mark is or has become so descriptive or generic as to no longer be capable of functioning as a trade-mark.

To support its allegations, appellant presented the testimony of several witnesses engaged in the anthracene oil trade. Essentially their testimony, and the documents relating thereto, was that the mark did not identify goods of any particular source or origin, but was ordinarily used in a descriptive or generic sense in connection with anthracene oils.

That testimony was challenged by appellee on the ground that said witnesses were directly interested as business competitors; that they handled a large number of other products in addition to anthracene oils; that they failed or refused to disclose the volume of their sales of the latter product; and that their sales territory was generally limited to the New England area. With respect thereto, the Examiner-in-Chief observed:

"There is also nothing in petitioner's testimony which establishes that the sales of 'Carbolineum' said to have been made by the companies named in petitioner's testimony were substantial either alone or in the aggregate and Petitioner's witness Todd on cross-examination refused to answer a question concerning the approximate yearly gallonage that was sold by his company. * * * Also petitioner's witness Looney was very evasive when questioned as to the extent of sales of 'Carbolineum.'

"Respondent's testimony, however, appears to indicate that the sales by these companies in a number of cases were so small as not to warrant the cost of legal action so that recourse was made by protest through correspondence as noted above. * * * *"

In further refutation, a witness called by appellee, a business competitor whose trade territory consisted of eight or nine Midwestern States, and owner of the mark "Usol," as applied to creosote oils and insecticides, testified that the word "Carbolineum" meant:

"A. Well, it means a high grade anthracene oil made here in Milwaukee processed under the so-called secret formula made by the Carbolineum Wood Preserving Company here in Milwaukee."

Appellee urges that such meaning has been established by their continued advertising and sales activities in behalf of its product for more than 60 years.

Several farm bulletins published by the United States Department of Agriculture were introduced in evidence by appellant. Those bulletins disclose, and are supported by oral testimony, that the word "Carbolineum" has been used for more than 30 years synonymously with, and as a descriptive or generic term for, high grade anthracene oils. In refutation thereof, appellee argues that such use does not serve to describe the product of its own secret formula, and, while it was powerless to prevent such alleged unauthorized use or misuse of the word, it did lodge protests with that Department. It appears, however, that save in one possible instance, such protests have been largely ignored.

Another exhibit offered to prove the descriptive or generic nature of the mark, an advertisement of a Washington D. C. dealer, displays the word "Carbolineum" which is described as a wood preserver and insecticide, but contains no reference to its source or origin. Appellee points out that since it had supplied the dealer over a period of years with the product "Carbolineum," the word was properly used in a trade-mark sense.

497

The record contains additional testimony and exhibits of a conflicting and contradictory nature. For example, appellant introduced the classified section of a Boston, Mass., telephone directory listing dealers under the heading "Carbolineum." On the other hand, appellee showed that Hackh's Chemical Dictionary, generally recognized as a standard reference, fails to mention "Carbolineum," but does refer to anthracene oils. In view of our conclusion, a detailed discussion of this and similar evidence of record would serve no useful purpose.

It is well established that the burden of proof rests upon one who seeks to cancel a registered mark. In our opinion the record clearly supports the holding of the Examiner-in-Chief that the petitioner has failed to discharge that burden. Accordingly, the decision appealed from is affirmed.

Affirmed.